IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN MAAS                                                              PLAINTIFF

V.                                          CAUSE NO. 1:11CV287-LG-RHW

CONNIE MORAN;  RICK BENWARD;
THE CITY OF OCEAN SPRINGS; and
JOHN DOES 1-15                                                      DEFENDANTS

<u>ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT are the [36, 38] Motions for Summary Judgment filed

by the City of Ocean Springs, Mississippi ("the City") and Defendants Connie Moran

and Rick Benward in their individual capacities.  Plaintiff John Maas filed this

action against the City, Moran, and Benward on July 18, 2011, alleging his rights

under the Fourth, Eighth, and Fourteenth Amendments to the United States

Constitution were violated when he was arrested for petit larceny on May 31, 2009.

He brings his constitutional claims pursuant to 42 U.S.C. § 1983.  Maas also alleges

a number of state law claims against Defendants Moran and Benward.[1]  Plaintiff

Maas has filed a response opposing the Motions, and Defendants have replied.

Having reviewed the parties' submissions and the relevant legal authority, the

Court finds that Defendants' Motions for Summary Judgment should be granted.

---

[1] Maas had also brought claims against Defendants Moran and Benward in their official capacities, which have been dismissed.  (*See* Mem. Op. & Order Grant. Mot. to Dismiss, ECF No. 14).  Maas's Amended Complaint had alleged state law claims of defamation, negligence, intentional and negligent infliction of emotional distress, outrage, malicious prosecution, abuse of process, and wrongful imprisonment against the City, which were also dismissed.  (*Id.*)

## BACKGROUND

The Court views the facts in the light most favorable to Maas as the nonmovant.  In 2009, Defendant Connie Moran was the mayor of Ocean Springs, and was running for reelection.  Scott Walker was also a candidate for mayor. According to the pleadings and evidence in the record, Plaintiff Maas served the Scott Walker campaign by building and installing campaign signs.  Defendant Benward is a reserve Ocean Springs police officer who also serves as a school security officer for the School District.

On or about April 22, 2009, Benward was at work at Ocean Springs High School, and while taking his lunch break, observed a white pick-up truck park across the street at Cox's Barbershop.  According to Benward, the truck pulled a trailer filled with Scott Walker campaign signs.  (Pl. Ex. A 13, 16, ECF No. 49-1). Benward observed the driver exit the vehicle, remove a Connie Moran for Mayor campaign sign that was posted near the barbershop, and place the Moran sign in the bed of the truck.  *Id.* at 13.  Benward described the individual as a white male who wore jeans, a white t-shirt, a baseball cap, and had curly brown hair.  Benward did not attempt to intervene or take any action at that time, but later informed Connie Moran of what he had seen.  *Id.* at 14-15, 31.  Benward has stated that he did not recognize Maas as the driver of the truck at that time, but that he described the individual to Moran, and Moran concluded it was Maas based on his description.  (*Id.* at 27-28, 32).  Moran has testified that when Benward described the individual to her, she "said, well, that's John Maas.  I know he's putting up

2

signs for Scott Walker," and that she was familiar with Maas. (*Id*. at 38-39, 41, 43, 48, 54-55).

On Sunday, May 31, 2009, Moran swore a criminal complaint against Plaintiff Maas for petit larceny, and alleged he had taken and carried away her political campaign sign. (Pl. Ex. G, ECF No. 49-7). The complaint bears Moran's name and signature, and does not mention her title as Mayor. Officer Steven Riley took Moran's report, and the Offense Form lists "Connie Moran" as the victim, and "Mayor; City of Ocean Springs" in the designated space for the victim's occupation/employer. (Def. Ex. O, ECF No. 38-15). The narrative states that Moran told Officer Riley that "she was advised of the theft by Officer Benward of the Ocean Springs Police Department." (*Id*.)

An Ocean Springs Municipal Court Judge issued a warrant of arrest. (Def. Ex. I, ECF No. 36-9). Maas was arrested, and found guilty of petit larceny on September 16, 2009. He was fined in the amount of $270.00. (Def. Ex. M, ECF No. 36-13). Maas appealed to the County Court of Jackson County, and Judge T. Larry Wilson held a hearing and heard testimony from Moran, Benward, and Maas on July 1, 2010. (Pl. Ex. A, ECF No. 49-1). Moran testified that Benward had described the incident to her, and she had sworn the complaint after becoming frustrated that a number of her campaign signs were stolen during her campaign. (*Id*. at 38-40). Benward testified about his observation of the incident, and that Maas was the man he observed take Moran's sign. (*Id*. at 13-15, 29). Maas testified that he and Benward knew one another at the time of the alleged theft, and that

3

there had been animosity between them prior to this incident.  (*Id.* at 64-65).

Therefore, Maas claims, Benward would have recognized Maas if he had actually

seen him take Moran's sign, and Benward was not truthful when he claimed that he

was sure Maas had taken the sign. (*Id.* at 74).  Maas also testified that he was

"Scott Walker's only sign man," and that he used his white pick-up truck to carry

Scott Walker signs, but he never pulled a trailer behind his truck. (*Id.* at 59, 61, 67).

He also testified that he had "the only work truck in the Walker campaign." (*Id.* at

69).

Judge Wilson entered an ordering finding that while Moran had probable

cause to file the affidavit against Maas, the City had not proven beyond a

reasonable doubt that Maas had committed petit larceny.  (Pl. Ex. F, ECF No. 49-6).

Judge Wilson specifically noted that there was a discrepancy between Benward's

description of Maas's vehicle and a photo of Maas's truck, and that he did not find

Benward's testimony to be credible.  On July 30, 2009, Maas filed a declaration

against Moran in the Justice Court of Jackson County seeking money damages for

"false arrest," "public embarrassment," and "false imprisonment." (Def. Ex. J, ECF

No. 36-10).  Moran filed a counter-claim for damages pursuant to Miss. Code Ann. §

11-55-1 and Miss. R. Civ. P. 11, alleging that Maas's action was frivolous. (Def. Ex.

K, ECF No. 36-11).  The Justice Court entered a Judgment in favor of Moran and

awarded damages in the amount of $500.00. (Def. Mem. 5 (¶29), ECF No. 37; Def.

Ex. L, ECF No. 36-12).

Maas filed his Complaint in this Court on July 18, 2011, alleging claims

4

under 42 U.S.C. § 1983 as well as state law against the City and Moran and Benward in their official and individual capacities. As noted above, Maas's claims against Moran and Benward in their official capacities, and his state law claims against the City, have been dismissed. *See* Mem. Op. & Order, ECF No. 14. Defendants now move for summary judgment on all of the remaining claims.

SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Defendants have satisfied this requirement, Maas, as the plaintiff with the burden of proof at trial, bears the burden of proof at the summary judgment stage to show that the motion should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). He must direct the court to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial; that is, he must come forward with evidence establishing each of the challenged elements of his case upon which he will bear the burden of proof at trial. *See id.* at 323-24. Maas may not rest upon mere allegations or denials in his pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *See*

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

DISCUSSION

## I.  Claims Against the City of Ocean Springs

Maas's remaining claim against the City of Ocean Springs is brought pursuant to 42 U.S.C. § 1983.  His Amended Complaint alleges that his arrest warrant was "issued pursuant to a policy or custom and said policy or custom was the moving force behind the constitutional violation," and that Moran, as well as others, "implemented the policy at issue."  (Am. Compl. 4 (¶17)).

Under the United States Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), to establish liability on the part of the City under section 1983, Maas must show his alleged injury was caused by (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers," or (2) "a persistent widespread practice of city officials or employees, which … is so common and well settled as to constitute a custom that fairly represents municipal policy."  *See Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert denied*, 472 U.S. 1016 (1985).  *Monell* established that a municipality may be sued under section 1983 where a custom or policy has caused a constitutional deprivation, but not "for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.  In other words, municipal liability does not attach based on a theory of

6

*respondeat superior.*[2]

There is no genuine issue of material fact as to whether Maas's arrest, and therefore his alleged injury, was caused by an official policy of the City of Ocean Springs.  Maas has not presented any evidence to show the existence of a policy that caused a constitutional deprivation.  As set forth above, his complaint blames a "policy or custom" for his arrest, but does not specify *what* policy or custom caused his arrest warrant to be issued.  In response to Defendants' Motions, Maas asserts that it was the "custom of the police department" to "do what Moran wanted," but he does not point to any facts or evidence in support of this conclusion. (Pl. Mem. 14, ECF No. 51).  Bare allegations, offered without proof, are insufficient to support a claim that there existed a policy or custom which was the moving force behind any

---

[2] Under *Monell* and subsequent decisions, in certain circumstances, a single decision by an official with policy-making authority in a particular area can be attributed to the municipality itself.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-28 (1988) (discussing *Monell* and *Pembaur*, and holding that "the city cannot be held liable under § 1983 unless [plaintiff] proved the existence of an unconstitutional policy.").  "The delegation of [such] policy-making authority requires more than a showing of mere discretion or decision-making authority on the part of the delegee . . . . The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body[.]" *Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).  Moreover, such acts of city officials, "whatever their rank," must be "in accord with city policy;" municipal liability is not based on the policy of that individual official.  *Bennett*, 728 F.2d at 768-69.  Maas has not argued that municipal liability should attach because Moran was an individual official with policy-making authority; rather, he has attempted to show that some City policy, or custom, led to his arrest. He has not argued, or submitted any evidence, that Moran has been delegated policy-making authority by the City in the area of making arrests.  Therefore, the Court does not find that municipal liability should attach based on Moran's individual decision to swear an affidavit against him.

alleged constitutional violation.  *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997).

Maas attempts to argue that the City is liable for Moran's and Benward's acts under a "deliberate indifference" theory.  He states that "[d]eliberate indifference, the standard of culpability, is closely related to the causation issue." (Pl. Mem. 14).  It is not clear how the "deliberate indifference" standard relates to the facts of this case, but in any event, Maas has not presented evidence of an omission by city policymakers that rises to the level of a "deliberate course of action."  *See Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989) (additional citation omitted)).  The Court does not find municipal liability in this case based on the "deliberate indifference" standard.

Maas has not established that any City policy or decision promulgated by the City contributed to a constitutional violation, or any other grounds for municipal liability in this case.  The City is entitled to judgment as a matter of law on Maas's claims.

## II.  Claims Against Defendants in their Individual Capacities

Maas's claims against Moran and Benward in their individual capacities consist of his claim under 42 U.S.C. § 1983 as well as state law claims of defamation, negligence, and/or gross negligence, intentional and negligent infliction

of emotional distress, outrage, malicious prosecution, and abuse of process.[3]

**A. Section 1983**

To prevail on a section 1983 claim, the plaintiff must prove that a person acting under color of law deprived him of a right secured by the Constitution or laws of the United States.  *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).  This analysis consists of two separate inquiries: (i) whether there was a deprivation of a constitutional right and (ii) whether the defendants acted under color of state law.  *See Lugar v. Edmondson Oil Co., Inc.* 457 U.S. 922, 931 (1982) (quoting *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978) (additional citation omitted)).  Maas's Amended Complaint includes a cause of action entitled "42 U.S.C. Section 1983 Claim for False Arrest," in which he alleges his Fourth, Fourteenth, and Eighth Amendment rights were violated when he was arrested without probable cause.  (Am. Compl. 3-4 (¶¶15-16), ECF No. 3).  Maas asserts that Defendants Moran and Benward "were at all times acting under the color of state law." (*Id.* at 3 (¶14)).

Defendants Moran and Benward argue they are entitled to judgment as a matter of law on Maas's section 1983 claim because Maas's arrest was supported by probable cause, and therefore no constitutional violation occurred.  Defendants

---

[3]  Maas's complaint had also alleged a state law claim of false arrest/false imprisonment, but he has since withdrawn that claim.  *See* Pl. Resp. to Mot. to Dismiss 4, ECF No. 11.

point out that multiple state court judges found that probable cause existed to arrest Maas.  They also argue that neither Moran nor Benward acted under color of law, and in the alternative, Moran and Benward are entitled to qualified immunity.

### 1. Constitutional Deprivation

Maas alleges he suffered a violation of his Fourth Amendment right to be free from illegal arrest.  In order to succeed on a false arrest claim, Maas must demonstrate that there was no probable cause to arrest him. *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The constitutional torts of false arrest ... and false imprisonment ... require a showing of no probable cause.") (internal quotations omitted); *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause and the claim for false arrest fails.") (emphasis in original)).

In support of their argument that probable cause existed to arrest Maas, Defendants submit the transcript of the hearing of Maas's criminal appeal before the Jackson County Court. (Def. Ex. A, ECF No. 37-1).  During the hearing, Moran provided sworn testimony that she signed an affidavit alleging Maas had committed petit larceny after Benward described to her the man he had witnessed remove one of her campaign signs.

According to Moran's testimony, Benward told her that the man who took her

campaign sign drove a truck, and was "wearing jeans, a t-shirt, cap and was pulling a trailer with . . . Scott Walker's large campaign signs." (*Id.* at 38).  Moran testified that when Benward told her this, she "said, well, that's John Maas.  I know he's putting up signs for Scott Walker."  (*Id.*)  Benward also testified during the hearing that he informed Moran that he witnessed a white, heavy-set man with curly hair who wore a t-shirt, blue jeans, a baseball cap, and glasses take a Moran campaign sign and place it into his truck, which was carrying Walker campaign signs.  (*Id.* at 14-15, 28, 33; *see also id.* at 38).  Moran and Benward both testified that Benward did not name Maas when he told Moran of the incident; he merely gave her a description of the man he had seen.  Moran concluded, based on her knowledge of Mr. Maas, that he had taken her sign.  (*Id.* at 28, 38-39).  During that same hearing, Maas testified that he drove the Walker's campaign's "only work truck," to carry Scott Walker campaign signs, and he stated specifically that he was "Scott Walker's only sign man."  *Id.* at 67, 69.  Moreover, the evidence before the Court demonstrates that Maas is a white male with brown hair, and weighs 240 pounds. (Def. Ex. 2, ECF No. 37-2).

Based on the testimony at the hearing, the Jackson County Court found that "Ms. Moran, based upon the description given to her by Mr. Benward, had sufficient probable cause to file the affidavit against Mr. Maas," while holding the City had not proven beyond a reasonable doubt that Maas had committed the crime of petit larceny.  (County Court Order 2, ECF No. 49-6).

The Fourth Amendment "does not guarantee that only the guilty will be arrested." *Smith v. Gonzales*, 670 F.2d 522, 526 (1982), *cert. denied*, 459 U.S. 1005 (1983). "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." *Id.* (citation omitted). Here, a municipal court judge reviewed Moran's sworn complaint and issued a facially valid arrest warrant. Under the Fifth Circuit's decision in *Smith*, the municipal judge's intervening evaluation of the complaint when he issued the arrest warrant is sufficient to "break the causal chain" and insulate" Moran and Benward from a false arrest claim.[4] *Id.* (holding defendant police officer was not liable under section 1983 for false arrest claim where he told witness to speak to assistant district attorney, who filed affidavit in support of arrest; it became duty of assistant district attorney and the reviewing judge to make their own inquiry as to whether was probable cause to arrest plaintiff.) There is no allegation that Moran withheld any relevant information or misdirected the municipal court in any way. *See Peters v. City of Biloxi, Miss.*, 57 F. Supp.2d 366, 371-72 (S.D. Miss. 1999) (if magistrate is

---

[4] According to the record, the extent of Benward's involvement in Maas's arrest was that he described to Moran what he witnessed, but did not name Maas specifically, (Def. Ex. A 38, ECF No. 37-1), and then he "verified to Officer Riley that he was the witness that gave Ms. Moran the information about her sign being taken." (Interrog. Resp., Def. Ex. H 12, ECF No. 36-8). He did not appear before the judge who issued the warrant or sign any affidavit in support thereof. Maas has not provided any statute, case law, or other legal basis on which Benward could be liable for false arrest based on these facts. He has merely made generalized arguments about Benward's credibility and the fact that Maas and Benward were familiar with one another. These arguments do not establish liability for false arrest.

misdirected by law enforcement official, this will taint deliberations of intermediary and keep chain of causation in tact) (citing *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) (citation omitted)).

Again, to satisfy Federal Rule of Civil Procedure 56, Maas must set forth specific facts showing the existence of a genuine issue for trial. Maas has not established that there is a genuine issue for trial with respect to whether Moran reasonably believed, based on what Benward told her, that Maas had taken her sign and committed the crime of petit larceny. Because Maas has not demonstrated a question of fact with respect to whether there was probable cause for his arrest, Defendants are entitled to summary judgment on this claim.

Plaintiff's Amended Complaint also alleges a violation of his Fourteenth Amendment right to due process. (Am. Compl. 3, ECF No. 3). Defendants contend they are entitled to judgment on the Fourteenth Amendment claim because their actions do not rise to the level of "offend[ing] the canons of decency" or "brutal force;" nor do they "shock the conscience." (Def. Mem. 11-12, ECF No. 37). They also argue that a due process violation does not occur where an arrest is supported by probable cause. Maas's response in opposition to the Motion for Summary Judgment does not mention the Fourteenth Amendment, and he makes no argument as to why summary judgment should not be granted on this claim. Maas does, however, state that he was deprived of a substantive due process right. (Pl. Mem. 10, ECF No. 51).

First, "[w]here a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).  Here, Maas complains he was subjected to an unlawful seizure.  Accordingly, the Fourth Amendment standard provides the appropriate analysis for his claim.  *See Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003) (noting that the United States Supreme Court, in *Albright v. Oliver*, 510 U.S. 266 (1994), "rejected the contention that the initiation of criminal proceedings without probable cause is a violation of substantive due process," and held that "petitioner must look to the explicit text of the Fourth Amendment as a source of protection for the 'particular sort of government behavior' at issue.")

Moreover, Maas has failed to make a showing that his right to substantive due process has been violated.  To establish a Fourteenth Amendment due process violation, Maas must show that the government action in this case is arbitrary to the point that it "shocks conscience." *See Lewis*, 523 U.S. at 846.  Maas, having failed to brief the Fourteenth Amendment issue, does not fulfill the Rule 56 mandate that he set out "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56.  Maas does not make any argument, or point to any evidence, that Moran's and Benward's actions are shocking to the conscience or that they employed their power as an "instrument of oppression." *See id.* (citing *Collins v.*

14

*Parker Heights*, 503 U.S. 115, 126 (1991) (additional citation omitted)).

Additionally, as noted above, Maas was arrested based on a facially valid warrant.

The Court finds that Defendants are entitled to summary judgment on his

Fourteenth Amendment claim.  *See Baker v. McCollan*, 443 U.S. 137, 143-45 (1979)

(dismissing plaintiff's Fourteenth Amendment due process claim for wrongful

imprisonment because he was arrested pursuant to warrant conforming to

requirements of Fourth Amendment).

Finally, Maas's Amended Complaint alleges a violation of the Eighth

Amendment.  Neither Maas nor the Defendants appear to address this claim in

their briefs.  The protections of the Eighth Amendment apply only to convicted

inmates, not suspects or pretrial detainees.  *See, e.g., Hare v. City of Corinth, Miss.*,

74 F.3d 633, 639 (5th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Maas makes no allegation that he was a prisoner who was subjected to

unconstitutional punishment, and his Amended Complaint does not allege any

mistreatment that falls under the Eighth Amendment's prohibition.  Therefore, he

has no Eighth Amendment claim.

### 2. *Color of Law*

As set forth above, in order for Moran and Benward to be liable under Section

1983, they must have acted under color of state law, or engaged in state action.  See

*Flagg Bros.*, 436 U.S. at 155; *Lugar*, 457 U.S. at 929.  Section 1983 does not reach

private conduct.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

15

Defendants argue that Moran was not performing duties as mayor or acting under color of law when she swore the complaint against Maas. They assert that the campaign sign was Moran's personal property, and she filed the affidavit as a "personal pursuit." (Def. Mem. 13, ECF No. 37). During the hearing on Maas's criminal appeal before the County Court, Moran testified that she purchased her campaigns signs with her own money or campaign contributions. (Def. Ex. A 40, 42 ECF No. 36-1). Defendants also argue that Benward's act of informing Moran of what he witnessed does not rise to the level of state action, and they point out that Benward took no official actions, such as filing a report or making an emergency call, or attempt to apprehend or arrest anyone.

In response, Maas argues that "Moran's position as Mayor clearly furthered the wrongful arrest of Maas," and that her "authority as Mayor allowed what would normally be a baseless charge . . . to prosecute Maas." (Pl. Mem. 11, ECF No. 51). Maas does not cite any evidence in support of this statement. He also asserts that there are questions of fact as to whether Moran's and Benward's positions with the City "furthered the wrongful arrest and constitutional violations." (*Id*. at 11-12).

When Moran swore the affidavit against Maas for taking her campaign sign, she was not carrying out an official duty as mayor. Moran may have nevertheless acted under "color of law" if her action was a misuse of her power, and was possible only because of her authority under state law.[5] *United States v. Tarpley*, 945 F.2d

---

[5] Moran's powers as Mayor are vested in her by virtue of state law. *See* Miss. Code Ann. § 21-3-15.

806, 809 (5th Cir. 1991). *See also Monroe v. Pape*, 365 U.S. 167, 184 (1961) (quoting *United States v. Classic*, 313 U.S. 299, 325-26 (1946)). However, if Moran was pursuing a private aim *and* not acting by virtue of state authority, she did not act under color of law. *Tarpley*, 945 F.2d at 809 (citing *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980)).

Under Mississippi law, criminal proceedings in municipal courts in Mississippi are "brought by sworn complaint filed in the municipal court. Such complaint shall state the essential elements of the offense charged and the statute or ordinance relied upon." Miss. Code Ann. § 21-23-7(1). As Moran argues, any citizen has the right to swear such a complaint.

In his response to the Motion for Summary Judgment, Maas makes a number of arguments essentially claiming that his arrest was carried out because Moran was the mayor, but he provides no evidence that the normal procedures were not followed in this case. He makes statements such as "Moran's position as Mayor clearly furthered the wrongful arrest of Maas," (Pl. Mem. 11), but he does not point to anything in the record to support this assertion. He also states that "Moran is the mayor of the City twenty four [sic] hours, seven days a week . . . Her dictates, when dealing with any city body, are that as mayor," (Pl. Mem. 13), but again, he does not support this statement with any facts or evidence on which the Court could base a finding that Moran acted under color of law in connection with this incident. He has not produced any evidence that Moran used her office to further his criminal prosecution, or pointed to any dispute of fact as to whether his arrest was carried

out because of Moran's position as Mayor.  Likewise, Maas has not provided any authority or case law on which the Court could find that Benward, in informing Moran of what he witnessed, acted under color of law.[6]

The Court does not find that there is any genuine issue of material fact with respect to Maas's Section 1983 claim against Moran and Benward. Accordingly, Defendants are entitled to summary judgment on this claim.

### B.  State Law Claims

Maas's Amended Complaint alleges a number of state law claims against Defendants, including defamation, negligence, intentional and negligent infliction of emotional distress, outrage, malicious prosecution, abuse of process, and wrongful imprisonment.  Defendants move for summary judgment on the grounds that they are time-barred, with the exception of the malicious prosecution claim.

Maas was arrested on May 31, 2009, and he filed his complaint on July 18, 2011.  As discussed in this Court's order of July 5, 2012, (ECF No. 14), several of Maas's allegations include intentional torts that are barred by the applicable statute of limitations under Mississippi law.  *See* Miss. Code Ann. 15-1-35.[7]

---

[6] Because the Court finds that Maas has not supported his allegations under Section 1983, and Defendants did not act under color of law, there is no need to address Defendants' alternative argument that they are entitled to qualified immunity.

[7] The statute provides:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or

Maas's defamation claim accrued the date the statements were made against him, May 31, 2009, and thus his defamation action is time-barred. *See Forman v. Miss. Publishers Corp.*, 14 So. 2d 344, 347 (Miss. 1943) ("There seems to be no doubt that the statute of limitations begins to run from the date of the first publication.") (citations omitted); *Hudson v. Palmer*, 977 So.2d 369, 379 (Miss. Ct. App. 2007) (Plaintiff's cause of action for defamation accrued at time police report containing allegedly false statements was filed).

Likewise, Maas's claim of abuse of process is also barred by the one-year statute of limitations governing intentional torts. "A cause of action for abuse of process, therefore, accrues at the termination of the acts which constitute the abuse complained of, and not from the completion of the action which the process issued." *Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835, 841 (S.D. Miss. 2011) (citing *Sullivan v. Boyd Tunica, Inc.*, Civil Action No. 2:06CV016–B–A, 2007 WL 541619, *3 (N.D. Miss. Feb. 16, 2007) (internal quotations and citation omitted). The actions Maas alleges Moran and Benward took against him, and

---

title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

Miss. Code. Ann. § 15-1-35.

This statutory provision has been interpreted to encompass other intentional acts that are substantially similar to the causes of action enumerated therein. *McGee v. Willbros Constr.*, *US, LLC*, 5:11-CV-80-DCB, 2011 WL 6781434 at *2 (S.D. Miss. Dec. 27, 2011) (citing *Childers v. Beaver Dam Plantation, Inc.*, 360 F. Supp. 331, 334 (N.D. Miss. 1973)).

19

which constituted an abuse of process, occurred in April 2009 (when Benward told Moran he witnessed the sign being stolen), and on May 31, 2009, when Moran swore the complaint against Maas. These occurred well over a year before Maas filed his complaint. Therefore, this claim is time-barred.

Maas's claims for intentional infliction of emotional distress and outrage are also time-barred by the one-year statute of limitations. Under Mississippi law, these claims are considered to be equivalent. *Donald v. Amoco Prod. Co.,* 735 So. 2d 161, 179 (Miss. 1999) (Mississippi Supreme Court "has recognized outrageous conduct as a tort more commonly known as the intentional infliction of emotional distress"). As with all intentional torts, they are subject to a one-year statute of limitations. *Jones v. Fluor Daniel Servs. Corp.*, 32 So.3d 417, 423 (Miss. 2010).

As the Court stated in its July 5, 2012 Order, Maas's negligence claim is not cognizable because this claim is based on his arrest and the intentional torts he alleges stem from that act. Maas may not circumvent the one-year statute of limitations applicable to intentional torts by alleging negligence. *See Dennis v. Travelers Ins. Co.*, 234 So.2d 624, 626 (Miss. 1970). Maas's claim for negligent infliction of emotional distress is dismissed for the same reason as his general negligence claim.

Maas has withdrawn his state law claims for false arrest and false imprisonment, which would also have been time-barred. *See* Pl. Resp. to Mot. to Dismiss 4, ECF No. 11. Therefore, Maas's only remaining claim against Defendants is his cause of action for malicious prosecution.

Under Mississippi law, a cause of action for malicious prosecution accrues on the day the criminal proceedings are terminated in favor of the plaintiff. *Coleman v. Smith*, 841 So. 2d 192, 194 (Miss. Ct. App. 2003) (citing *City of Mound Bayou v. Johnson*, 562 So.2d 1212, 1217 (Miss. 1990)).  As this Court found in its Order of July 5, 2012, Maas's malicious prosecution claim accrued on July 19, 2010 when his conviction was reversed, and therefore was timely filed.  Defendants now move for summary judgment on this claim, and argue that Maas cannot establish a *prima facie* case of malicious prosecution.

The elements of a malicious prosecution claim in Mississippi are:

> (1) The institution of a criminal proceeding; (2) by, or at the insistence of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause in the institution of the proceedings; (6) the suffering of injury or damage as a result of the prosecution.

*Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 728 (Miss. 1989) (citations omitted).  Defendants submit that, under Mississippi law, probable cause existed to arrest Maas, and therefore his claim must fail.  They also argue that there is no evidence that Moran acted with malice, and no evidence that Benward instituted any proceedings against Maas.

In order for Moran to have had probable cause to swear the complaint against Maas, and thereby institute the criminal proceedings against him, she was required to have "a concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief."  *Tebo v. Tebo*, 550 F.3d 492, 499 (5th Cir.

2008) (quoting *Nassar v. Concordia Rod & Gun Club, Inc.*, 682 So.2d 1035, 1042

(Miss. 1996)).  This standard stems from the Mississippi Supreme Court's reliance

on the Restatement, which provides:

> One who initiates criminal proceedings against another
> has probable cause for so doing if he (a) reasonably
> believes that the person accused has acted or failed to act
> in a particular manner, and (b)(i) correctly believes that
> such acts or omissions constitute at common law or under
> an existing statute the offense charged against the
> accused[.]

*Tebo*, 550 F.3d at 499 (citing RESTATEMENT OF TORTS § 662 (1938) and discussing

*Harvill v. Tabor*, 128 So.2d 863, 865 (1961) (additional citation omitted)).

With respect to whether Moran had probable cause, the Court finds the most

relevant evidence to be the parties' testimony before the Jackson County Court in

Maas's criminal proceeding.  As discussed above, Benward informed Moran that he

witnessed a white male driving a pick-up truck carrying a number of Scott Walker

signs take one of Connie Moran's campaign signs and place it in his truck.

According to Maas's own testimony, he drove a pick-up truck and he was "Scott

Walker's only sign man" in the mayoral election.  Moran testified that she knew

Maas was putting up signs for the Walker campaign, and she was familiar with

him.  (Def. Ex. A 41, 43, 48, 54-55, ECF No. 37-1).

Based on this evidence, there was a reasonable basis for Moran's honest

belief that Maas was the person who took her campaign sign.  She was also correct

in believing that such an act would constitute the offense she charged in the sworn

complaint.  *See* Miss. Code Ann. 97-17-43(1).[8]  Maas has not demonstrated that

there is any dispute as to whether Moran's belief was honest and reasonably-based.

He has raised questions of fact with respect to the accuracy of Benward's

description and his credibility, but does not explain how this would make *Moran's*

belief less than honest.  Regardless of whether Benward was credible in his

testimony, based on the record before the Court, Benward's description of the

person he observed take a campaign sign did create a reasonable basis for Moran to

believe Maas was the person he described.  In light of the testimony in the record,

the Court finds that Moran had probable cause to believe Maas had committed the

offense she alleged.

  Additionally, Maas has not presented any evidence that Moran acted with

malice.  "In the context of a malicious-prosecution claim, malice occurs when the

primary purpose of prosecuting is one other than bringing an offender to justice.

*Miles v. Paul Moak of Ridgeland, Inc.,* 113 So. 3d 580, 586 (¶17) (Miss. Ct. App.

---

[8] The statute provides:

> If any person shall feloniously take, steal and carry away
> any personal property of another under the value of Five
> Hundred Dollars ($500.00), he shall be guilty of petit
> larceny and, upon conviction, shall be punished by
> imprisonment in the county jail not exceeding six (6)
> months or by fine not exceeding One Thousand Dollars
> ($1,000.00), or both. The total value of property taken,
> stolen or carried away by the person from a single victim
> shall be aggregated in determining the gravity of the
> offense.

Miss. Code. Ann. § 97-17-43.

2012), *cert. denied*, 116 So. 3d 1072 (Miss. 2013) (citing *Coleman v. Smith*, 914 So.2d 807, 811-12 (¶ 12) (Miss. Ct. App. 2005) (additional citation omitted)).  Maas has not demonstrated any genuine issue of fact as to Moran's subjective state of mind to show that her purpose might have been other than "bringing an offender to justice."  *See id.* (citing *Page v. Wiggins*, 595 So.2d 1291, 1293 (Miss. 1992)).  Moran is therefore entitled to summary judgment on the malicious prosecution claim.

Finally, Maas has not provided any legal basis on which Benward could be liable for malicious prosecution, as Moran was the person who instituted the proceeding.  The extent of Maas's argument on this issue is that Moran instituted the proceeding with "Benward's assistance," and that his role was "essential to Moran's case."  (Pl. Mem. 16, ECF No. 51).  He supplies no evidence or legal authority in support of these assertions.  Accordingly, Maas's malicious prosecution claim against Benward should be dismissed.

CONCLUSION

As set forth above, the Court finds that the City of Ocean Springs is entitled to judgment as a matter of law on Maas's claims against it pursuant to 42 U.S.C. 1983.  The Court further finds that Defendants Benward and Moran, individually, are entitled to judgment as a matter of law on Maas's claims pursuant to 42 U.S.C. 1983 and his state law claims of defamation, negligence, intentional and negligent infliction of emotional distress, outrage, malicious prosecution, abuse of process, and wrongful imprisonment.  A separate judgment shall be entered.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for

Summary Judgment [36] filed by Defendants Connie Moran and Rick Benward is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary Judgment [38] filed by Defendant City of Ocean Springs is **GRANTED**.

Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 16th day of August, 2013.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE